# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

JENNIFER A. LUCERO,

    Plaintiff,

v.                                                       Civ. No. 18-701 GJF

ANDREW SAUL, *Commissioner of*
*Social Security*,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Jennifer A. Lucero's ("Plaintiff's") "Motion to Reverse and Remand for Rehearing, with Supporting Memorandum" [ECF 17] ("Motion"). The Motion is fully briefed. *See* ECFs 18 (Commissioner's Response), 20 (Reply). Having meticulously reviewed the entire record and the parties' briefing, the Court concludes that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the reasons articulated below, the Court will **DENY** the Motion.

## I.    FACTUAL BACKGROUND

Plaintiff was born in 1976. Administrative Record ("AR") 157. She completed the eleventh grade, and as of July 2017, she lived with her husband and two children, then ages thirteen and six. AR 40, 60.[2] In October 2011, she was laid off from her full-time job as an accounts receivable clerk. AR 36, 204. Although she managed to find part-time work in 2013 and 2014, including for a temporary employment agency and a daycare, she did not obtain another full-time

---

[1] On June 17, 2019, Andrew Saul was sworn in as Commissioner of Social Security. Consequently, Mr. Saul has been "automatically substituted as a party." FED R. CIV. P. 25(d). Furthermore, because "[l]ater proceedings should be in [his] name," the Court has changed the caption of this case accordingly. *Id.*; *see also* 42 U.S.C. § 405(g) (stating that such an action "survive[s] notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

[2] Plaintiff also had a third child, then aged twenty-four, who did not live at home. AR 40.

job. AR 37-39, 175. In March 2015, she applied for social security disability benefits, claiming that she suffered from a disability that began in November 2012. AR 157.[3] She claimed that her disability resulted from five conditions: carpal tunnel syndrome, scoliosis, bone disorder, knee surgery, and chronic pain. AR 202.

In August 2015, the Social Security Administration (SSA) denied Plaintiff's claim, concluding that she had no severe limitations. AR 74. In March 2016, upon Plaintiff's request for reconsideration, the SSA again denied her claims and again concluded that Plaintiff had no severe impairments. AR 85-88.[4]

Plaintiff requested a hearing, which was held in July 2017 before ALJ Raul Pardo. AR 33. Assisted by counsel, Plaintiff testified at the hearing, as did Cornelius Ford, a vocational expert. AR 33-34. In August 2017, "after careful consideration of all the evidence," the ALJ concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act. AR 11.[5]

Plaintiff sought relief with the SSA's Appeals Council. AR 151-54. In May 2018, the Appeals Council found, among other things, no abuse of discretion by the ALJ, no error of law, and no lack of substantial evidence. AR 1. It therefore denied Plaintiff's request to review the ALJ's decision and affirmed that decision as the Commissioner's final decision. *Id*. Plaintiff

---

[3] At the subsequent hearing, however, after being asked (1) how—given that she "went back to work in 2013 and 2014"—she "became disabled back in November, of 2012" and (2) what evidence showed that "in 2012 . . . [her] carpal tunnel was disabling," Plaintiff (through her attorney) changed the alleged disability onset date to August 26, 2014, the date of her "right knee arthroscopy surgery" and the timeframe when "the majority of the medical records start . . . [and] when she was able to get insurance." AR 39-43.

[4] *See also* AR 87 (commenting that Plaintiff's claims appeared "minimally credible as she ha[d] not sought or received treatment for her allegedly disabling impairments since 2014 [and] show[ed] *no* functional limitations on exam" (emphasis added)).

[5] A more in-depth discussion of the ALJ's decision appears in Section IV, *infra*.

timely petitioned this Court for relief in July 2018, alleging that the ALJ's decision was "erroneous as a matter of law and regulation." Compl. 2, ECF 1.

## II. PLAINTIFF'S CLAIM

Plaintiff's fundamental claim is that the ALJ erroneously concluded that she still had the "residual functional capacity" ("RFC") to perform a limited range of light work. Mot. 8-12; AR 15. Specifically, she argues that the ALJ failed to provide "a narrative discussion describing how the evidence support[ed] [this] conclusion." Mot. 8-10 (quoting SSR 96-8p, 61 Fed. Reg. 34474, 34478 (1996)). She also argues that the ALJ did not properly consider or discuss her testimony about her inability to afford surgery or her symptoms and limitations. Mot. 11-12.

## III. APPLICABLE LAW

### A. Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[6] The Court's review of that final agency decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ

---

[6] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *see O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

3

failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Consequently, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[she] is not presently engaged in substantial gainful activity," (2) that "[she] has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[7] or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant retains sufficient RFC "to perform other work in the

---

[7] If the claimant can show that she has a listed impairment, she will be found to be disabled and no further steps will be analyzed. 20 C.F.R. § 404.1520(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id*.

5

national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

## IV. ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In his August 2017 written decision, the ALJ affirmed that he carefully considered "all of the evidence" and the "entire record" before him. AR 11-12.

### A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since August 26, 2014, the amended alleged onset date of her disability. AR 13.[8] At step two, the ALJ found that Plaintiff had the following "severe" impairments: right knee surgery, carpal tunnel surgery on the left hand, and carpal tunnel syndrome in the right hand. *Id*. The ALJ classified these impairments as "severe" because they were both "medically determinable" and had more than a minimal effect on Plaintiff's "ability to perform basic work activities." *Id.* (citations omitted). The ALJ also considered Plaintiff's other alleged impairments, i.e., "scoliosis, a bone disorder and chronic pain," but found them to be non-severe because there were "no medical records in evidence regarding these [conditions]." AR 14.[9] At step three, the ALJ found that no impairment or combination thereof satisfied the criteria of a listed impairment. AR 15.

---

[8] Although Plaintiff still worked at a daycare after this date, the ALJ found that such employment did not qualify as "substantial gainful activity" because her earnings ($1,018 in 2014) were below the applicable limit of $1,070 per month. *Id.* (citing 20 C.F.R. § 404.1574(b)).

[9] Although the ALJ gave Plaintiff additional time to submit more medical records, the additional records that she submitted did not address these impairments. AR 10, 13, 276, 422-89. Furthermore, the ALJ found that while Plaintiff had been diagnosed with depression, this limitation was non-severe. AR 13-14. The ALJ also found that, although Plaintiff's more recent "bilateral thumb osteoarthritis" diagnosis did not meet the 12-month durational requirement, any associated limitations would nevertheless be incorporated into his RFC analysis. AR 14; *see also* 20 C.F.R. § 404.1509. Finally, the ALJ found that, although Plaintiff's Body Mass Index placed her in the "overweight" category, "[her] weight was not an impairment." AR 15.

### B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC.[10] Here, the ALJ found that Plaintiff had the RFC to perform "a limited range of work contained in the light exertional level." AR 15 (citations omitted).[11] In making this finding, the ALJ affirmed that, in addition to considering the opinion evidence, he considered "all symptoms and the extent to which [Plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." AR 15-16. As described below, the ALJ also discussed the evidence and reasoning that led to this RFC finding.

#### 1. Plaintiff's Allegations

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 16. The ALJ began by reviewing Plaintiff's allegation, both through her testimony and written submissions, that she was "in severe pain 'all the time.'" *Id.* (quoting AR 215) (citing AR 33-68, 242). The ALJ also reviewed her allegations that "her ailments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, concentrate, understand, use her hands and get along with other people." *Id.* (citations omitted).

---

[10] *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *but cf. Winfrey*, 92 F.3d at 1023 (describing the RFC determination as technically the first part of step four).

[11] The ALJ specifically found that Plaintiff had the RFC to "lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could sit for 6 hours in an 8-hour workday with normal breaks. She could stand and/or walk for 6 hours in an 8-hour workday with normal breaks. Her ability to push and/or pull was limited by her ability to lift and/or carry. She could frequently reach bilaterally. She could frequently handle items bilaterally. She could occasionally balance, stoop and climb ramps and stairs. She could never climb ladders, ropes or scaffolds. She could occasionally work at unprotected heights. Her time off task could be accommodated by normal breaks." AR 15.

### 2. ALJ's Assessment

The ALJ nevertheless found that the "objective medical evidence,"[12] "opinion evidence,"[13] and "other evidence" did not support these allegations. AR 15-20. Regarding the "other evidence," the ALJ observed that Plaintiff "care[d] for her children—especially her young child" and that she "prepared meals, drove a vehicle, attended church and did some household cleaning." AR 16, 20 (citing AR 208-19).[14] He also observed that in February 2016 Plaintiff reported taking no medications, and in June 2017 she reported taking only ibuprofen (600 milligrams twice a day for pain). AR 18, 20 (citing AR 274, 373).[15]

The ALJ also found that Plaintiff had "gaps in treatment . . . [and] had a history of being medically non-compliant." AR 20. For example, the ALJ found that there were no records of

---

[12] *See* AR 17 (ALJ observing that pre-surgery diagnostic testing in 2013-2014 indicated that (1) Plaintiff's right hand had a partial dislocation in one joint and a "mild flexion deformity" in another, (2) Plaintiff had "severe median nerve dysfunction at the wrist bilaterally" (prompting a discussion of carpal tunnel surgery), and (3) Plaintiff's right knee had a "large reticular cartilage defect" and a "complex displaced medial meniscus tearing with a non-acute ACL [anterior cruciate ligament] tear" (prompting an outpatient, arthroscopic "partial medial meniscectomy" surgery on that knee shortly thereafter [*see also* AR 291-92]); AR 18-19 (ALJ reviewing (1) the 2015 treatment notes showing a "normal musculoskeletal range of motion," (2) the 2016 examination results on Plaintiff's hands shortly before her left hand surgery (and the subsequent treatment notes indicating Plaintiff "had a normal recovery" and "decreased left hand pain and numbness"), and (3) the 2017 examination of her right knee by another doctor (who subsequently recommend physical therapy and bracing—recommendations that Plaintiff chose not to follow)).

[13] *See* AR 18 (ALJ citing two state agency examiners who opined that Plaintiff "had no functional limitations," "no impairments," and "could handle a desk job"). Given that Plaintiff had right knee surgery and "was diagnosed with bilateral carpal tunnel syndrome, which she underwent surgery for in her left hand," the ALJ did not conclude that Plaintiff had "*no* functional limitations" and thus gave only "little weight" to these state examiners' opinions and found that Plaintiff was able to perform "a limited range of [light] work." AR 15, 18 (emphasis added); *see also* AR 19-20 (giving no weight to the state agency examiners who opined that Plaintiff had no severe physical impairments).

[14] *See also* AR 14 (ALJ noting that Plaintiff "regularly went to church and sporting events"); AR 17 (ALJ noting no record of any restrictions placed on Plaintiff after her right knee surgery); AR 18 (ALJ referencing treatment notes that "indicate[d] that [Plaintiff] had a normal musculoskeletal range of motion").

[15] *See also* AR 17 (ALJ citing orthopedic surgeon's notes, one month after Plaintiff's right knee surgery in 2014, that her pain was controlled); AR 18 (ALJ citing state examiner who noted in 2016 that Plaintiff "appeared in no acute distress despite reporting pain of 10 on a scale of 10" and opined that she had no impairments and that her examination was "grossly normal"); AR 19 (ALJ citing treatment notes following Plaintiff's carpal tunnel release surgery indicating she "had a normal recovery" and "decreased left hand pain and numbness"); AR 20 (ALJ discounting Plaintiff's husband's claim that she is "always in pain," given Plaintiff's statement that she "use[d] only ibuprofen to manage her pain").

8

Plaintiff receiving any medical care between November 2013 (when she sought emergency treatment for an insect bite on her hand) and July 2014 (when she sought treatment for right knee pain). AR 17. Similarly, there were no records of her receiving care between September 2014 (when she attended a follow-up examination after her right knee surgery) and December 2015 (when she sought emergency care for another insect bite, this time on her foot). AR 18.

Regarding Plaintiff's medical non-compliance, the ALJ found that she did not "follow[] through on referrals for specialized care," did not "wear[] her knee brace as directed by her orthopedist," and "refus[ed] treatments and therapies when they were offered." AR 20. Specifically, the ALJ found no evidence that Plaintiff followed through on a physical therapy referral following the 2014 surgery on her right knee. AR 17. Furthermore, although Plaintiff was instructed approximately one month after her knee surgery to "continue with range of motion exercises and therapy" and to "return for care in 4-6 weeks," the ALJ likewise found no evidence that she ever returned for such care. *Id.* In addition, the ALJ found that Plaintiff's surgeon who performed carpal tunnel release surgery on Plaintiff's left hand in November 2016 described Plaintiff as "doing well" but having "refused a referral to occupational therapy." AR 19. Similarly, the ALJ found that another physician, who was treating Plaintiff's right knee in early 2017, noted (1)) that "[Plaintiff] had not been wearing her [knee] brace at home unless she was 'being very active,'" (2) that she had not complied with his referral to physical therapy, (3) that another such referral was necessary, and (4) that Plaintiff had not wanted a "possible right knee CS [corticosteroid] injection." *Id.*

At the end of his RFC assessment, the ALJ "called into question" Plaintiff's allegations of disabling symptoms because of Plaintiff's "high level of engaging in activities of daily living," Plaintiff's gaps in treatment, Plaintiff's medical non-compliance, and Plaintiff's reason for ceasing

9

to work ("being laid off . . . [as opposed to] an inability to complete the work"). AR 20. Given that Plaintiff nevertheless had "severe physical impairments," however, the ALJ concluded that assigning her an RFC of (limited) light work was appropriate and "supported by the evidence of record as a whole." *Id.*

**C. Step Four**

At step four, given the RFC described above, the ALJ found that Plaintiff was "capable of performing past relevant work as an accounts receivable clerk." AR 21. Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act." *Id.*

**V. ANALYSIS**

**A. The ALJ's RFC Finding Is Supported by a Proper Narrative Discussion and Substantial Evidence**

Plaintiff argues that the ALJ failed to provide "a narrative discussion describing how the evidence support[ed] [his] conclusion" that Plaintiff had the RFC to perform a limited range of light work. SSR 96-8p; Mot. 8-10. As explained below, the Court disagrees and holds that the ALJ's RFC finding was supported by a proper narrative discussion, as well as substantial evidence.

    *1. Controlling Legal Standard*

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (stating that an "ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence" (citation omitted)). Although "[t]he record must demonstrate that the ALJ *considered* all of the evidence, . . . an ALJ is not required to *discuss* every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.

10

1996) (emphasis added) (citation omitted). Instead, "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010.[16]

   2. Analysis

      a. The ALJ Considered All of the Evidence

Plaintiff alleges that the ALJ "ignore[d] probative evidence," "failed to consider *properly* [Plaintiff's] symptoms," and "did not *discuss* [certain] testimony in the decision"—and Plaintiff recites much of the evidence supporting her claim of disability[17]—but she directly points to no specific evidence that the ALJ allegedly ignored. Mot. 8-12; Reply 1-3 (emphasis added).[18] Plaintiff's Reply, however, seems to *imply* that the "probative evidence" that the ALJ allegedly ignored was (1) that Plaintiff, although admitting to "car[ing] for her children and her husband," did not describe exactly *how* she did so, and (2) Plaintiff's testimony about her limitations due to right knee pain and carpal tunnel syndrome. Reply 2-3. This Court nevertheless finds that the ALJ considered all of the evidence.

Plaintiff's apparent implication that the ALJ ignored these two items of evidence is erroneous. The Court first finds that Plaintiff's implication that the ALJ should have considered

---

[16] For example, the court in *Hendron v. Colvin*, 767 F.3d 951, 954-56 (10th Cir. 2014), held that "the ALJ's RFC determination [was] supported by a proper narrative statement" after finding that (1) the record "reflect[ed] that the ALJ considered all of the evidence," (2) the ALJ "thoroughly reviewed the medical evidence," "described the [plaintiff's] own report of her abilities," and "discussed the activities [the plaintiff] engaged in," and (3) the plaintiff "fail[ed] to demonstrate that the evidence [not explicitly discussed by the ALJ] was significantly probative."

[17] Specifically, Plaintiff recites her own testimony (and reports) about her symptoms and limitations to support her assertion that she was unable to perform even "a limited range of [light] work." AR 15; *see* Mot. 1, 9-10, 12; Reply 2-3. But Plaintiff refers to little other evidence—e.g., medical opinions—to support such a contention. *See* Mot. 8-12; Reply 1-3; *see also* AR 18-20 (ALJ referencing four medical opinions, from state agency examiners, which found that Plaintiff either "had no functional limitations" or "no severe physical impairments").

[18] *See also Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) ("perfunctory complaints failing to frame and develop an issue are not sufficient" (internal quotation marks omitted)); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (only considering issues "that have been adequately briefed for [the court's] review").

the *nonspecific* nature of her statement, namely that she (in some unspecific way) "care[d] for her children and husband," really amounts to an assertion that the ALJ should have weighed this statement differently. *Id.*; *see also Newbold*, 718 F.3d at 1262 (preventing courts from "reweigh[ing] [such] evidence"). Second, this Court finds that the ALJ also considered Plaintiff's testimony regarding her limitations—something that is patently obvious from the ALJ's decision. *See* AR 15-20. In fact, a fundamental issue that the ALJ resolved was whether "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] . . . consistent with the . . . evidence." AR 16. And—in addition to carefully considering the evidence and reviewing Plaintiff's allegations[19]—the ALJ spent approximately four pages explaining why Plaintiff's statements "[were] not entirely consistent with the medical evidence and other evidence in the record." AR 15-20.

In conclusion, having considering Plaintiff's arguments—and after meticulously reviewing the entire record, including the 489-page administrative record, *see* AR 1-489—the Court finds that the ALJ indeed considered all of the evidence.

### b. The ALJ Properly Discussed the Evidence

Plaintiff argues that the ALJ erred in failing to "link his finding for light work to any evidence." Mot. 10. But Plaintiff—aside from a recitation of evidence supporting her disability claim[20]—offers no further explanation. *See* Mot 8-10; Reply 1-3.[21] Contrary to Plaintiff's

---

[19] For example, as previously mentioned, the ALJ considered Plaintiff's alleged limitations regarding "her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, concentrate, understand, use her hands and get along with other people." AR 16; *supra* Section IV(B)(1).

[20] *See supra*, note 17.

[21] *See supra,* note 18.

12

assertion, this Court holds that the ALJ sufficiently "link[ed] his [RFC] finding[] to specific evidence." *Barnett*, 231 F.3d at 689.

The ALJ based his RFC finding of limited light work on "opinion evidence," as well as "objective medical evidence and other evidence." AR 15-16. Specifically, the ALJ gave some weight to the opinions of two state agency examiners who opined that Plaintiff "had *no* functional limitations." AR 18 (emphasis added). But after reviewing the medical evidence, he found that Plaintiff nevertheless had functional limitations resulting from her "severe impairments" of knee surgery, left hand carpal tunnel surgery, and bilateral carpal tunnel syndrome. AR 13, 20. Consequently, he assigned only "little weight" to these examiners' opinions of *no* limitations. AR 18. At the other end of the spectrum, the ALJ likewise did not fully adopt Plaintiff's allegations of *disabling* limitations. AR 20. Specifically, the ALJ found that her allegations were "not entirely consistent with the medical evidence." AR 16; *see also* AR 13-20 (ALJ thoroughly discussing medical opinions and records—none of which tends to support a disabling limitation). The ALJ also found that her allegations were not consistent with the "other evidence in the record" due to Plaintiff's "high level" of daily activities,[22] gaps in treatment,[23] medical non-compliance,[24] and reason for ceasing employment.[25] AR 16, 20. The ALJ thus "discuss[ed] the evidence supporting his decision," *Clifton*, 79 F.3d at 1009-10, including this opinion evidence, medical evidence, and

---

[22] *E.g.*, caring for her husband and children (including a young child), preparing meals, driving a vehicle, performing household cleaning, and regularly attending sporting events and church. AR 14, 16, 208.

[23] *I.e.*, an eight-month gap (from November 2013 to July 2014) and a fourteen-month gap (from September 2014 to December 2015). AR 17-18.

[24] *E.g.*, not following the recommendations to attend physical therapy for her knee or use a knee brace. AR 19; *see also id.* (noting Plaintiff's refusal, after her carpal tunnel surgery, to be referred to occupational therapy and her refusal to receive a corticosteroid injection for her knee).

[25] *I.e.*, downsizing (as opposed to medical reasons). AR 20.

other evidence. Consequently, the Court holds that the ALJ linked his RFC finding to specific evidence.

    *3. Conclusion*

This Court holds that the ALJ applied the correct legal standards by "consider[ing] all of the evidence," and "discussing the evidence supporting his decision." *Clifton*, 79 F.3d at 1009-10. Furthermore, as the ALJ did not omit any "significantly probative" evidence, *see* Section V(B) below, the Court holds that "the ALJ's RFC determination [was] supported by a proper narrative statement." *Hendron*, 767 F.3d at 954-56.

Finally, given the significant "opinion evidence" and the "objective medical evidence and other evidence" supporting the ALJ's RFC finding, the Court holds that it is supported by substantial evidence—i.e., evidence that "a reasonable mind might accept as adequate." *Biestek*, 139 S. Ct. at 1154.

**B. The ALJ Did Not Omit Any Significantly Probative Evidence**

Plaintiff argues that the ALJ erred by not considering or discussing her testimony about her inability to afford surgery or her testimony regarding her symptoms and limitations. Mot. 11-12.[26] The Court disagrees.

The ALJ was not required to discuss Plaintiff's testimony about her inability to afford surgery because such evidence was not "significantly probative." *Clifton*, 79 F.3d at 1010. To begin, when the ALJ asked Plaintiff about her Medicaid insurance coverage, Plaintiff stated that she would not have *surgery* without insurance and that such coverage was "off and on"—but

---

[26] Plaintiff also seems to imply that the ALJ should have discussed her reason for not following the recommendation to wear a knee brace. Reply 2 (citing AR 422 (Plaintiff reporting the brace to be "very bulky and not convenient")). The Court, however, finds that he was not required to explicitly state that Plaintiff's decision not to follow her doctor's recommendation was for the sake of convenience. *See Clifton*, 79 F.3d at 1010 (requiring the ALJ to discuss "*significantly probative* evidence he *rejects*" (emphasis added)).

14

provided few other details. AR 54.[27] Furthermore, when the ALJ specifically asked Plaintiff about the gap in her medical records from September 2014 to December 2015, she never stated or implied that the gap existed because she was uninsured or could not afford treatment—but rather led the ALJ to believe that she *did* receive treatment during this time and that such records *did* exist. *See* AR 56-59.[28] Plaintiff's on-and-off insurance coverage is therefore not "significantly probative," for example, in showing that Plaintiff really had disabling limitations but was merely unable to afford any treatment during this timeframe—particularly when Plaintiff represented that she obtained (or could have obtained) treatment during this time.[29] Thus, although the ALJ appropriately considered Plaintiff's on-and-off insurance coverage and her resulting inability to afford surgery at times,[30] the Court holds that he was not required to discuss such evidence.

The ALJ was likewise not required to further describe Plaintiff's testimony regarding her symptoms and limitations in more detail because his discussion of Plaintiff's testimony did not

---

[27] *See also* AR 41 (ALJ asking Plaintiff at the hearing "Any reason why you didn't have [carpal tunnel release surgery on your left hand] before [November 2016]? You were [allegedly] disabled back in [November] 2012. . . ." Plaintiff responding "I didn't have insurance, and I just couldn't afford to have it done. And then, when I stopped working [in October 2011], I got Medicaid."); AR 55 (ALJ asking "And then you had [Medicaid insurance] through till when? Until recently, when you had it terminated in June [2017 due to your husband's income] or was it off and on or what?" Plaintiff responding "It was off and on. We qualified and then we didn't qualify. . . . I did have Medicaid when I had my knee surgery [in August 2014].").

[28] Plaintiff also stated that there was some delay in obtaining these records, given that she had recently changed attorneys. AR 58-59. Because the ALJ "need[ed] records for 2015 to see what happened," he gave Plaintiff ten extra days to submit such records (and instructed her to notify him if she needed more time). AR 59. Plaintiff, however, only submitted additional records from December 2015 to March 2017, but she submitted no records—or explanation—regarding the gap in medical records (and apparent medical treatment) from September 2014 to December 2015. AR 276. Furthermore, in her instant motion, Plaintiff included no explicit assertion that she was actually uninsured, or could not afford *any* treatment, during this timeframe. Mot. 11.

[29] Furthermore, even *assuming* that Plaintiff's on-and-off insurance coverage at least partially explains such a gap in treatment, it still would not be "significantly probative" in proving that her allegations of disabling limitations were consistent with the evidence. *See supra* Section V(A)(2)(b) (discussing the ALJ's reliance on not just a gap in medical treatment but also on "medical evidence," "opinion evidence," and "other evidence"—including Plaintiff's "high level" of daily activities, medical non-compliance, and reason for ceasing employment—in discounting Plaintiff's allegations).

[30] *See* SSR 16-3p, 81 Fed. Reg. 14166, 14170 (2016) (requiring the ALJ to "consider[] possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

15

omit any "significantly probative" evidence. As mentioned, the ALJ reviewed Plaintiff's testimony and allegations. *See* AR 16 (ALJ reviewing Plaintiff's allegations that she was "in severe pain all the time" and that she was limited in "her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, concentrate, understand, use her hands and get along with other people" (citing AR 35-59 (Plaintiff's testimony), 208-220(function report)). Furthermore, Plaintiff describes her testimony about her specific symptoms and limitations (e.g., her testimony that she can stand for only ten minutes, walk only half a block, drops things, and must spend six hours lying bed during normal working hours because of her pain) and criticizes the ALJ for not specifically mentioning these items in his decision. Mot. 12. But Plaintiff neither identifies what of this evidence was "significantly probative" nor discusses how it would have met such a standard—or how the ALJ failed to incorporate it into his discussion. *See id.*; Reply 2-3. Thus, although Plaintiff essentially criticizes the ALJ for not *describing* her testimony in enough detail, it is clear from the record that the ALJ *discussed* her testimony about her symptoms and limitations. *See* AR 15-20 (ALJ thoroughly discussing why such testimony "[was] not entirely consistent with the medical evidence and other evidence in the record").

In sum, the Court holds that the ALJ did not omit from his discussion any "significantly probative evidence he reject[ed]." *Clifton*, 79 F.3d at 1010. Thus, he was not required to discuss Plaintiff's inability to afford surgery or include in his discussion a greater description of her testimony about her symptoms and limitations.

## VI. CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*